UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

JAY CONNOR, individually
and on behalf of a class of all persons and
entities similarly situated,

        Plaintiffs,

vs.                                                                                          Case No. 2:23-cv-3726-RMG

PRIORITY CONCEPTS, INC.

        Defendant.

## **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Priority Concepts, Inc. ("Priority Concepts") seeks dismissal of this lawsuit on two bases, both of which should be denied.

*First*, Plaintiff sufficiently alleges claims under the Telephone Consumer Protection Act's Robocall provisions for calls made directly by Priority Concepts. Mr. Connor alleges that the only company he spoke with was Priority Concepts. On some of the calls, they provided the Defendant's address and website. Then, in addition to those conversations, Priority Concepts sent him a contract proposal as a result of the pre-recorded calls. All indications are that the calls were made by Priority Concepts, especially when all facts are construed in the Plaintiff's favor.

*Second*, Priority Concepts claims it cannot be on notice of the Plaintiff's claim that they used a pre-recorded message even though the Plaintiff (a) provided the content of the pre-record (b) provided the dates of the calls and (c) further explained that he responded to the recorded messages and spoke to Priority Concepts. Priority Concepts is on notice of the Plaintiff's pre-record claim.

As such, Priority Concepts motion should be denied.

**BACKGROUND**

### A. The Plaintiff's Allegations

As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227). The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

Here, Mr. Connor has alleged "Priority Concepts, Inc. utilized pre-recorded messages to advertise its goods or services." *See* ECF No. 11 ("Amended Complaint") at ¶ 4. Mr. Connor has alleged that Priority Concepts has alleged that he continued to receive calls from the Defendant after the filing of the lawsuit. *Id.* at ¶ 5. Mr. Connor provides detailed allegations regarding those

2

contacts. *Id.* at ¶¶ 23-67. Given the *en masse* nature of automated calling, the Plaintiff is seeking to represent the following putative classes:

PRE-RECORDED CELL PHONE CLASS

> All persons within the United States to whom (a) Defendant, and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) using an artificial or prerecorded voice; (c) to a phone registered to a cellular telephone service or any other service for which the person is charged for the call; (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

SCTPPA CLASS:

> All persons with a South Carolina area code to whom (a) at any time from May 18, 2018 (b) Defendant, or someone acting on their behalf (c) placed at least one telephone solicitation to a number registered on the National Do Not Call Registry.

**STANDARD**

"In recent years, the Supreme Court has cautioned against drive-by jurisdictional rulings that dismiss a claim for lack of jurisdiction when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim. Its admonition is grounded in the principle that the subject matter jurisdiction of a federal court is not generally resolved by concluding that the plaintiff has failed to allege an element of a federal cause of action or that the plaintiff might not be able to prove an element of a federal cause of action. Rather, a court must look more fundamentally at whether the plaintiff's claim is determined by application of a federal law over which Congress has given the federal courts jurisdiction. If it is, his complaint should not be dismissed for a lack of subject matter jurisdiction, as the federal courts have been given the power and the authority to hear and resolve such claims.

"Deficiencies in the statement of a federal cause of action should normally be addressed by a motion under rules challenging the sufficiency of the complaint or the evidence pleaded to support the complaint, such as authorized by Rules 12(b)(6), 12(c), or 56. …The failure to state the elements of a federal claim can form the basis of a Rule 12(b)(1) motion only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.

"In short, subject matter jurisdiction relates to a federal court's power to hear a case, and that power is generally conferred by the basic statutory grants of subject matter jurisdiction, such as 28 U.S.C. § 1331 or 28 U.S.C. § 1332. If a plaintiff invoking § 1331 pleads a colorable claim arising under the Constitution or laws of the United States, he invokes federal subject matter jurisdiction, and deficiencies of the claim should be addressed by the other mechanisms provided by the federal rules." *Holloway v. Pagan River Dockside Seafood*, 669 F.3d 448, 452-53 (4th Cir. 2012) (cleaned up).

With respect to a 12(b)(6) motion, to survive a motion to dismiss, a complaint must contain sufficient facts which, if accepted as true, state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is plausible where the plaintiff pleads factual content that would allow a court to draw the reasonable inference that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

## ARGUMENT

I. **Assertion of a non-frivolous TCPA claim alone Establishes Subject Matter Jurisdiction.**

Plaintiff asserts a colorable claim against Priority Concepts under the TCPA, which is a federal statute. Under 28 U.S.C. § 1331, he therefore has properly invoked this Court's subject

matter jurisdiction over a federal question. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371-72 (2012). This should end the Court's inquiry on a motion to dismiss for lack of subject matter jurisdiction.

As the Fourth Circuit explained in *Holloway*: "The failure to state the elements of a federal claim can form the basis of a Rule 12(b)(1) motion only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." 669 F.3d at 452-53.

In that case, the plaintiff filed an action under a federal statute, the Jones Act, and the defendant filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the plaintiff "did not satisfy the requirements of the Jones Act" because he was "not their employee" or a seaman. *Id*. at 450-51. "In support of the motion, the defendants submitted an affidavit from Melzer attesting to Holloway's status as a self-employed independent contractor." *Id* at 451.

"After conducting a hearing on the defendants' motion to dismiss, the district court granted the motion under Rule 12(b)(1), concluding that the court lacked subject matter jurisdiction. In its opinion, the court found that Holloway had not established that he was a seaman under the Jones Act." *Id*. The district court reached this conclusion despite "[r]ecognizing that the question was a mixed question of law and fact". *Id*.

In reversing the dismissal, the Fourth Circuit determined that in his complaint the plaintiff "alleged each of the elements of a Jones Act claim." *Id*. at 453. Although many of the plaintiff's factual allegations were "thin" and "disputed", his claim was "colorable", was not "made solely for the purpose of obtaining jurisdiction", and was not "wholly insubstantial" or "frivolous". *Id*. As a result, based on a survey of Supreme Court precedent, the Fourth Circuit held that the district court was "require[d] … to exercise federal jurisdiction over the case", and that if the defendant

5

wanted to challenge the substantive merits of the plaintiff's claim it could do so under Rule 56, but not under Rule 12(b)(1). *Id.* The circumstances are identical here and the same conclusion is warranted. Plaintiff has alleged a TCPA claim for which there is federal jurisdiction. While Mr. Connor is without discovery privy to the full extent of Priority Concepts's pre-recorded telemarketing conduct, he alleges sufficient facts regarding their calling conduct, described above. Although Priority Concepts appears to dispute these facts, Priority Concepts does not contend (nor could it) that Plaintiff's claim arising from a telemarketing call that identified Priority Concepts as responsible for is not colorable, is made solely for obtaining jurisdiction, or is wholly insubstantial or frivolous. Under Fourth Circuit precedent, the motion is therefore improper and should be denied on this basis.

The situation presented here is similar to the one addressed by the court in *Clough v. Highway Auto. Pros LLC*, No. SACV 23-00107-CJC (JDEx), 2023 U.S. Dist. LEXIS 114607, at *8-9 (C.D. Cal. May 23, 2023), another TCPA case. There, the plaintiff alleged that defendant was legally responsible for telemarketing calls sent by a vendor. Like Priority Concepts here, the defendant challenged standing on the basis of traceability, contending that it had no involvement in a vendor's decision to make calls. The district court found this position to be without merit. It observed as follows:

> "[T]he traceability requirement" for standing "is less demanding than proximate causation, and thus the 'causation chain does not fail solely because there are several links' or because a single third party's actions intervened.
>
> "[W]hen the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery . . . ." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009); *see also Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (noting that when questions on jurisdiction and merits are intertwined, "the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial"). Indeed, ruling any other way "would improperly allow a defendant to defeat jurisdiction by declaration," as "[t]he

>defendant could always defeat jurisdiction by simply declaring that" the defendant had no involvement in "the alleged violations."

Here, Priority Concepts similarly and improperly seeks an adjudication of the extent of its "involvement" in illegal telemarketing on a motion to dismiss.

Ultimately, where a plaintiffs seek to hold a defendant liable for its own conduct, it cannot be that the defendant can escape liability through a Rule 12(b)(1) motion that factually challenges a complaint at the pleading stage. Otherwise, the merits of every federal claim involving vicarious liability, an *alter ego* theory of liability, agency liability, or joint employer liability would collapse into a pre-discovery "jurisdictional" challenge under Rule 12(b)(1). Federal courts understandably have rejected this approach in various contexts, such as vicarious liability claims under the TCPA (*Clough*), vicarious trademark liability claims under the Lanham Act,[1] employer liability under the Family Medical Leave Act,[2] and joint employer liability under Title VII.[3] These same principles justify denying Priority Concepts' motion here.

Whether a plaintiff ultimately establishes that a particular defendant is liable for illegal telemarketing is not a jurisdictional prerequisite under the TCPA. The motion should be denied for this reason alone.

**II.     The Plaintiff has Alleged that Priority Concepts Made the Pre-Recorded Calls.**

---

[1] *Kroma Makeup EU, Ltd.*, No. 6:14-cv-1551, 2015 WL 1708757, at *7 (M.D. Fla. Apr. 15, 2015).

[2] *Cobb v. Contract Transport, Inc.*, 452 F.3d 543, 549 (6th Cir. 2006) (holding that it was error to find subject matter jurisdiction lacking because the defendant did not meet the definition of an "employer" under the FLSA, because "this line of reasoning . . . erroneously conflates subject matter jurisdiction with failure to state a claim over which relief may be granted"); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) ("Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law as a predicate for relief –a merit-related determination.").

[3] *Brown v. ABM Indus., Inc.,* 2015 WL 7731946, at *3 (N.D. Ill. Dec. 1, 2015); *see also La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867 (9th Cir. 2014) ("The nonexistence of a cause of action was no proper basis for a jurisdictional dismissal.") (cleaned up).

Plaintiff adequately alleges Priority Concepts' direct liability for the pre-recorded telemarketing calls to himself and putative class members that were on the National Do Not Call Registry. The TCPA assigns direct liability to persons that "make" or "initiate" calls that violate the statute. *See* 47 U.S.C. § 227(b)(3). Although these terms are not defined, the FCC has held an entity 'makes' or 'initiates' a call "when it takes the steps necessary to physically place a telephone call[.]" *In re Dish Network, LLC*, 28 FCC Rcd 6574, 6583 (2013). Thus, for example, "the person who dials the number he or she is trying to reach . . . initiates the call[.]" *Wick v. Twilio Inc.*, 2017 U.S. Dist. LEXIS 107936, *10-11 (W.D. Wash. July 12, 2017) (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7986, ¶ 40 (2015)).

The Plaintiff has clearly alleged that Priority Concepts is directly liable for the conduct at issue and has made several allegations that support the fact that Priority Concepts made pre-recorded calls. Of course, at this stage of the proceedings, all allegations must be accepted as true, all reasonable factual inferences drawn in favor of the plaintiff. *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).

Mr. Connor has plainly alleged "Priority Concepts, Inc. utilized pre-recorded messages to advertise its goods or services." *See* ECF No. 11 ("Amended Complaint") at ¶ 4. Mr. Connor has alleged that Priority Concepts has alleged that he continued to receive calls from the Defendant after the filing of the lawsuit. *Id.* at ¶ 5. Indeed, Mr. Connor provides incredible detail regarding the pre-recorded call interactions he has received and how Priority Concepts is attached to each.

First, regarding the July 11, 2023 pre-recorded call, Mr. Connor alleges that the recorded message did not name a specific company but instead "stated that business are due a refund based

on a federally mandated employee retention credit program." *Id.* at ¶ 26. The only real company identified on the call was Priority Concepts. Mr. Connor continues to allege that during the subsequent sales pitch, Mr. Connor spoke with a representative from Priority Concepts who advertised their service of obtaining a tax credits for a fee. *Id.* at ¶ 27. "Henry" from Priority Concepts provided the Defendant's website. *Id.* at ¶ 28. "Henry" also provided the Defendant's New York address to confirm that the Defendant was offering the goods and serviced. *Id.* at ¶ 29. A contract e-mail was then sent to Mr. Connor for the Defendant's services as a result of the call and the contract e-mail states:

> Priority Concepts has sent Consulting Agreement for Jays comercial service.pdf for your signature.
>
> Thank you for contacting Priority Concepts. Based on the initial review of your information, it looks like Jays comercial service may qualify for the Employee Retention Credit (ERC) program.
>
> In order to continue with the detailed analysis and preparation of the final submission package, please review and sign the attached Consulting Agreement.
>
> Thank you!
>
> Priority Concepts Inc
> info@priorityconceptsinc.com

*Id.* at ¶ 32. Indeed, Mr. Connor alleges that he sent a letter to the Defendant regarding the pre-recorded call and that the Defendant did not deny making the calls. *Id.* at ¶ 34-35.

Mr. Connor has similarly detailed allegations for the July 20, 2023 call. Again, Mr. Connor alleges receiving a pre-recorded call stating that business are due a refund based on a federally mandated employee retention credit program. *Id.* at ¶ 39. During the subsequent sales pitch, Mr. Connor spoke with a representative from Priority Concepts. *Id.* at ¶ 40. "Jason" from Priority

9

Concepts provided the Defendant's name and services. *Id.* at ¶ 41. Mr. Connor didn't want to be called and told the Defendant that prior to ending the call. *Id.* at ¶ 42.

Mr. Connor alleges that he received another pre-recorded call on July 27, 2023. Again, he alleges receiving a pre-recorded call stating that business are due a refund based on a federally mandated employee retention credit program. *Id.* at ¶ 46. During the subsequent sales pitch, Mr. Connor spoke with a representative from Priority Concepts. *Id.* at ¶ 49. "John" from Priority Concepts provided the Defendant's name and services. *Id.* at ¶ 50. Mr. Connor didn't want to be called and told the Defendant that in a follow-up call from "John". *Id.* at ¶ 51. Nonetheless, Priority Concepts sent Mr. Connor a contract. *Id.* at ¶ 52. The contract states:

> **THIS CONSULTING AGREEMENT** (hereinafter "Agreement") is made and entered into on July 27, 2023 by and between Priority Concepts Inc. ("Priority Concepts"), a New York corporation, and…

*Id.* at ¶ 54.

The calls continued. The next call that Mr. Connor alleges is on August 3, 2023. *Id.* at ¶ 55. Again, he alleges receiving a pre-recorded call stating that business are due a refund based on a federally mandated employee retention credit program. *Id.* at ¶ 56. During the subsequent sales pitch, Mr. Connor spoke with a representative from Priority Concepts. *Id.* at ¶ 59. "Sara" provided the Defendant's name and services and e-mailed a contract for the Defendant's services. *Id.* at ¶ 60. The contract states:

> **THIS CONSULTING AGREEMENT** (hereinafter "Agreement") is made and entered into on July 27, 2023 by and between Priority Concepts Inc. ("Priority Concepts"), a New York corporation, and…

*Id.* at ¶ 61.

Here, the only party identified to have physically transmitted the calls is Priority Concepts. As a result, at this stage it is plausible, if not necessary, to infer that Priority Concepts

10

itself called Plaintiff, and that as a result, Plaintiff's injury from the calls is traceable to Priority Concepts. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019) ("[E]ven a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement.").

Indeed, while recently dealing with a motion to dismiss making similar arguments in a TCPA case, another court denied the motion holding:

> These allegations, taken as true as they must at this stage of the litigation, along with any permissible and plausible inferences, are sufficient to establish a direct or otherwise authorized connection to AP Gas and thus "cross over the line to plausibly state a claim for relief ...."

*Abramson v. AP Gas & Elec. (PA), LLC,* No. 22-1299, 2023 U.S. Dist. LEXIS 18996, at *9 (W.D. Pa. Feb. 6, 2023) (Denying similar motion to dismiss in a TCPA case); *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) (Finding the same in a TCPA case and holding "Defendant might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action, and the Court must take them as true at this early stage in the litigation."). And another Court has also similarly held:

> The question before the Court at this juncture is whether Plaintiff pleads a valid cause of action, not whether Plaintiff establishes the claim. Sunpro's motion to dismiss goes beyond the pleading to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls.
>
> For example, Sunpro argues that Plaintiff fails to "support" a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received because she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended Complaint belies this argument—Plaintiff alleges several times that she or her attorneys confirmed that Sunpro placed the subject calls. Plaintiff even includes the phone numbers and the dates she received the calls. To the extent Sunpro disputes that it directly placed the calls, Sunpro may take discovery on this matter and argue the issue at the dispositive motion stage.

> Sunpro next argues that, because Plaintiff failed to plead facts showing any conduct attributable to Sunpro as opposed to third parties, Plaintiff lacks Article III standing. The Court quickly disposes of this argument because the Court concludes that the Amended Complaint sufficiently alleges that Sunpro placed the subject calls. Sunpro's remaining arguments in favor of dismissal are denied for the reasons stated in Plaintiff's response.

*Stemke v. Marc Jones Constr., LLC,* No. 5:21-cv-274-30PRL, 2021 U.S. Dist. LEXIS 181916, at *6-7 (M.D. Fla. Sep. 23, 2021).

The Defendant's arguments do not mandate a different result. First, Priority Concepts misstates the Plaintiff's factual allegations – Mr. Connor did not "call someone back"[4], he simply responded to each of the unwanted pre-recorded message prompts as explained above. In doing so, as identified above, the *only company he spoke with was Priority Concepts*. Then, in addition to those conversations, Priority Concepts sent him a contract proposal as a result of the pre-recorded calls. On some of the calls, they provided the Defendant's address and website. All indications are that the calls were made by Priority Concepts, especially when all facts are construed in the Plaintiff's favor.

The Defendant simply offers examples of information that is not included, but not required to be included in a TCPA claim. For example, the telephone number utilized is often spoofed to prevent the company from being able to be identified as having made the calls. *See That's Not Your Neighbor* Calling, https://consumer.ftc.gov/consumer-alerts/2018/01/thats-not-your-neighbor-calling (Last Visited November 14, 2023). Not surprisingly, the Defendant didn't provide any case law to support that the Caller ID for telemarketing calls alleged to have violated the TCPA is required. Furthermore, the exact content of a telemarketing call alleged to have violated the TCPA's restrictions on robocalls is irrelevant, as the TCPA makes it ""unlawful for

---

[4] *See* ECF No. 12 at *8.

any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any . . . cellular telephone service . . . or any service for which the called party is charged for the call[.]" The content of the call is irrelevant and as a result these two exemplars of allegations not included do not impact the fact that the Plaintiff has stated a claim.

The only case relied upon by the Defendant is *Scruggs v. CHW Grp., Inc.,* No. 2:20cv48, 2020 U.S. Dist. LEXIS 253431 (E.D. Va. Nov. 12, 2020), where the plaintiff admitted that he could not allege that the Defendant called him, instead alleging that ""[d]iscovery will confirm that CHW, or someone acting on CHW's behalf, initiated the [eight contested] calls to Mr. Scruggs." *Id.* at *15. The Plaintiff makes no such concession here. He alleges that Priority Concepts made the call, he alleges that Priority Concepts was the only company identified and he alleges that the callers said that they were representatives from Priority Concepts and provided their address and website during the call. Furthermore, as a result of the call he alleges that Priority Concepts sent the Plaintiff contracts in response to most calls. Defendant's motion to dismiss therefore fails with regard to Plaintiff's liability allegations.

**III.    The Plaintiff has Alleged that the Calls were made using a Pre-Recorded Voice.**

Under the TCPA, it is unlawful "for any person ... to make any call [other than for emergencies or with the recipient's prior express consent] using … an artificial or prerecorded voice" to a cell phone. 47 U.S.C. § 227(b)(1)(A)(iii). A plaintiff sufficiently pleads a pre-recorded message claim under the TCPA when the allegations supply details beyond bare legal conclusions or the recitation of statutory language, such as the frequency of the calls and their content. *Evans v. Nat'l Auto Div., L.L.C.*, No. 15-8714, 2016 U.S. Dist. LEXIS 29348, at *4-5

13

(D.N.J. Mar. 7, 2016). Here, Mr. Connor alleged the content of the recorded message, alleging that the recorded message did not name a specific company but instead "stated that businesses are due a refund based on a federally mandated employee retention credit program." Indeed, he alleges that he got the same type of recorded message four times. *Id.* at ¶¶ 26, 39, 47, 56. He alleges the frequency of the calls because he alleges the four dates on which he received pre-recorded calls from the Defendant. *Id.* Mr. Connor also alleges that he responded to each pre-recorded call. *Id.* at ¶¶ 27, 40, 48, 57.

These facts are more than sufficient to put Priority Concepts on notice of the claims against it. *See e.g. Neptune v. Whetstone Partners, LLC*, 34 F.Supp.3d 1247, 1250 (S.D. Fla. 2014) (finding sufficient allegations that calls were prerecorded where *inter alia* defendant called plaintiff on numerous occasions several times per day, with generic content messages such as a prerecorded voice reminding plaintiff that his payment was due); *Sojka v. DirectBuy, Inc.,* 35 F. Supp. 3d 996, 1003 (N.D. Ill. 2014) ("The complaint describes in detail five voicemails left for the Sojkas by DirectBuy from August 2012 to November 2012."). *Greene v. Select Funding LLC*, No. 2:20-cv-07333-RGK-KS, 2021 U.S. Dist. LEXIS 206366, at *9 (C.D. Cal. Feb. 5, 2021) ("Plaintiff alleges that he knew that caller he spoke with on April 10 was a pre-recorded message based on the speaker's 'content, tone and inflection,' 'the generic content of the voice message,' and the speaker's cadence. These allegations survive a motion to dismiss."). Indeed, the Court in *Abramson v. AP Gas & Elec. (PA), LLC*, Civil Action No. 22-1299, 2023 U.S. Dist. LEXIS 18996, at *8 (W.D. Pa. Feb. 6, 2023) also found that "Abramson alleges that he received a call that started with the following pre-recorded message…[message transcribed]…This allegation sufficiently alleges that the caller used a prerecorded message.").

Finally, as the Plaintiff has stated a claim under the TCPA, the Court need not dismiss the SCTPPA claim, since the Court has supplemental jurisdiction.

## **CONCLUSION**

Based on the forgoing, the Court should deny Priority Concepts' motion to dismiss.

Dated: November 15, 2023

                                  PLAINTIFF,
                                  By his attorneys,

By:    *s/ Dave Maxfield*
        David A. Maxfield, Fed ID 6293
        P.O. Box 11865
        Columbia, SC 29211
        803-509-6800
        855-299-1656 (fax)
        dave@consumerlawsc.com

        Anthony I. Paronich
        Paronich Law, P.C.
        350 Lincoln Street, Suite 2400
        Hingham, MA 02043
        (508) 221-1510
        anthony@paronichlaw.com